May it please the Court. Anne McClintock on behalf of the Federal Defender's Office on behalf of Mr. Salado. Until you ask me other questions, I'm going to address the three issues. And I guess we have disputes on the standard review on two of them and agree that there's a plain error review on one of them. And I'd like to start with the insufficient evidence claim supporting the money laundering convictions. These are counts 31 and 32. The government claims that there was a waiver by failing to raise this motion for these specific issues in the motion for judgment of acquittal. And as we pointed out in our briefs, that's not accurate. The motion that was made at the end of the government's case said that Salado was requesting the court for a directed verdict of not guilty on all allegations. All allegations necessarily includes the two money laundering counts. And then he, after he did make some arguments specific to concerns about the reliability of some testimony and evidence to support convictions on some other counts, he returned to saying that our request would be a directed verdict on everything. Well, that means the title is enough to establish the argument was made to the district court? And it doesn't look like any specific argument was made to the district court resembling the argument you presented to us. Is that true? Well, I think if you take the – it wasn't elaborated, but in Rule 29 context. It wasn't elaborated. It wasn't made. Well, no. Other than through the title of saying we want dismissal of everything. We want acquittal on everything.  But that, I mean, in Rule 29. Is that enough? That is enough. And in this case's court – case law, it's enough. What cases? The ones I stated in the brief, which I don't have right in front of me. Well, I mean, that seems to be what the issue is about. I mean, if you acknowledge that the particular argument wasn't made and you're standing on the proposition that it's enough to stand up and say I want acquittal on everything, then that seems kind of important. This Court has said in a number of cases, but specifically that when someone preserves the objection on an appeal where they're not conceding something away and the government has – the court, rather, has an opportunity to respond to the issue, then it's preserved. And a couple of the cases that I have are Benson. These are not cases that – I don't think I put these in the brief. These are things I found when I was reviewing it for oral argument purposes in Grissom, where it's enough. Both of those are in sentencing context, but it's enough when the court – when the attorney – the defendant makes the argument. And particularly in a Rule 29 context, in this particular case, the issue about money laundering goes specifically back to the accountant for the government. And in the course of the testimony, the defense elicited, and there was a fairly lengthy discussion during the testimony, about what the accountant had traced as far as the source of funds that went into the accountant. So the court was well aware that there had been $100,000 in that account before the check at issue, which we concede was traced back to the illegal conduct, that there was more funds in that account. And the accountant – and so the trial judge was well aware that the accountant conceded there was a reasonable possibility. Well, you're talking about the argument that the district court might have understood was made if it was made. Let me ask you about our precedent in the United States v. Graff, which says, A defendant need not state specific grounds to support a Rule 29 motion. Citation. However, when a Rule 29 motion is made on a specific ground, other grounds not raised are waived. Why isn't this case? That's this case. I think this is that case. But I think you're overly narrowly reading what the attorney says. There's nothing in Graff that says that the attorney has to argue every single issue, and there's nothing in the argument the attorney says. Well, what it says is, if you argue specific issues, issues not argued are waived. Well, but – Why isn't that this case? My reading of his argument is that he's raising a Rule 29 as to all issues, and that's the nature of his argument. He's just – there's insufficient evidence. He's arguing there's insufficient evidence as to each of the counts of conviction. But I don't have anything to add to that. I thought that after he had argued the two grounds that he did argue, the judge said, quote, The basis for the motion is distilled to be an issue of credibility of the main witnesses, close quote. That's at the record of page 53. So at that point, the judge made clear that he thought the motion was down to this issue. And so if there was some other issue, that was the time to raise it, was it not? I would agree that it should have – it could have been better raised. And if he didn't, why isn't it that way? Well, I don't want to repeat what we've just gone through, but – I really don't. I guess it's – I'm going to have to – I don't have anything to add to that. Try the merits, then. Okay. Suppose it's not waived. Okay. So, well, even if his – I was going to say even if it was waived under a plain error review, that he still prevails, because there are a number of cases from this Court – I mean, I had one 1,000 years ago, Garcia-Guizar. But the main one is Cruz that basically recognizes that there is only a theoretical distinction between doing a plain error review in a sufficiency evidence case and what one would do under a normal Jackson standard of review. So the substantive argument for this issue is that – is just what I was hinted – what I was discussing earlier was that the accountant – this is a 1957 money laundering. So under Judge Noonan's and this Court's decision in Rutgerd, the government had to prove – they had to link the cashier's checks to criminally derived proceeds. And what they proved and what we've admitted in the briefing is that the check from – I don't want to say Burtis, but the $28,000 check that went into the account, they proved that. But the accountant did not testify and said – admitted that the rest of the $100,000, which was far more than enough to cover the two cashier's checks, that he had no knowledge and so no evidence that any of that money was criminally deprived. And so under Rutgerd, either the account had to be depleted to prove a 1957 liability or you had to show all the funds in that account were criminally derived, and that it failed to do. So I think even under the plain error standard that he prevails on those – on challenging those two convictions. Why couldn't a jury have listened to this and decided this money goes in, this money goes out, it's the same money? Well, clearly the jury did decide that because they convicted him. But the standard is very deferential. It is very deferential. But it is beyond a reasonable doubt. And when you have a witness, the accountant for the government saying there is a reasonable possibility that the funds in that account that preexisted were lawfully obtained, saved, earned, investment income, whatever, that they weren't tainted in any way. You don't really have an expert saying that. You have an expert dealing with a question in very general terms, answering could be. Right. And in this case, the defendant took the stand. He did. And said flat out that it was legitimate. And the jury obviously discredited his testimony in numerous respects because they otherwise would not have convicted. That's a little bit different. And why can't they discredit that? They can't. And the opposite. The testimony that the he gave regarding the $28,000 check, the one that went into the account, that's legitimate. That they discredited. And there is ample evidence, and we don't dispute that there is ample evidence to support that that was criminally derived. And had the 1957 count alleged money laundering for the deposit of that check, I wouldn't be making this argument. It's the allegation has to be. But I thought your point was, in response to Judge Clifton's, as to why couldn't the jury figure money in, money out, it's really the same money, despite the fact that there's other monies in the account. And I thought your response was to say, well, because the expert gave this testimony that the possibility existed, and now you have the guy taking the stand, and he gives testimony that directly refutes the possibility that the expert had hypothesized, actually, affirms the possibility, but the jury then, by adverse inference, expressly refutes it. Why can't they go back then to saying money in, money out? My response is that that's not quite what the testimony and the evidence is. The expert, when being asked about the rest of the account balance, says I don't know where the $100,000 that was already previously in that count came from. The expert and no one else gave any testimony that even that the $28,000 check had cleared. I think there was a bank statement for later in the month. But Rutgerd says that when you have a commingled account, the government under 1957 prosecution has to prove either all the money in the account, that there's some direct connection, and the absence of evidence that this check even cleared creates an absence of evidence. And the expert's testimony saying the rest of the money in the account, he has no doubt that it's probable that that money is legitimate, that raises a reasonable doubt. Why doesn't the contemporaneousness, which you're referring to by saying the check may not have cleared, actually provide a circumstantial evidence, if the check did clear, as to what was really going on? There's just nothing in the record about how long the bank clears a check of that amount of money. Well, but common experience says it's not going to be. If he puts money in day X and two days later or whatever, it takes the same amount of money out to buy the car, common experience would suggest, would it not, that that's the money he's using. I don't think that's the common experience. I mean, I think the money has to be, if I put a $28,000 check in my account and didn't have but $5,000 in it before and I'm writing a $30,000 check, my bank is not going to honor that check. I mean, it's going to wait to make sure that it's cleared. But we're somewhat going in circles. I mean, I think the testimony, my main point is that the testimony he gave was that that was rejected by the jury was the $28,000 check was from legitimate sources. That I don't care about. No, I understand you're saying it doesn't relate. I understand that it doesn't relate directly to the point you're making. Right. Yeah, I understand that. Okay. Can you address the length of the sentence? Yes, sir. Sentencing factors. There are two components to the sentencing challenge. One is definitely plain error, and I couldn't hear if you wanted me to address one versus the other. There's the base offense level error that has to do with the money laundering, and then there's the loss amounts. And again, as before, with the loss amounts, I think it's very clear that he objected to loss amounts, both in the written objections and at sentencing. And I put him out in the brief, but he objects to all the loss amounts. He says they're not proven. He specifically talks about the midterm accountant not being able to provide specific amounts. Can you tell the court how much he actually got from this whole transaction? If I can find it in my brief. In the opening brief, I gave a list based on the jury verdicts. Page 48. Thank you. I have it flagged. And I believe that adds up to $265,865 and some cents. Why doesn't it include all the money that went to a couple of these other companies? It should have gone to the other companies. This is the amount based on the what the problem is, is that the jury acquitted him of the bulk of more than half the accounts. Yeah. And so the court could impose loss for relevant conduct had it expressly found by preponderance of the evidence that he was still responsible for that loss. Well, they also convicted him of conspiracy. It did. Conspiracy is the count that catches him, it seems to me. Well, even with conspiracy, the conspiracy is satisfied by any one of these counts. And so there's still, when the defendant is disputing the total loss amount, the judge has to make a finding that, and the court didn't do it. I mean, it just accepted whole cloth the government's statement in its pre-sentence its objections to the pre-sentence report or sentencing memorandum. They came up with the, I forget exactly, but the total loss. Do you really think that the judge never thought about that? Or if we send it back, there's any possibility the judge is going to say, oh, the defendant was, he didn't really cause this much loss. I mean, his comments were pretty sharp. It seems pretty clear that he decided that this defendant was responsible for a lot of loss. But it's also pretty clear that he didn't distinguish between the acquitted conduct and the rest of it. So I think the thing was to bring what? I'm sorry? Between the acquitted counts and the rest of it. Oh. Okay. And that's really what the focus is. If, I mean, if the Court wants, if the Court views the conspiracy as covering anything and everything into it, then I don't have anything to add. But I think when you've got the majority of the counts being acquitted where he's specifically, not that they hung, but an actual acquittal saying that he's not, it's not been proven beyond a reasonable doubt on those counts, I think there's a problem that the Court needed to address and just deal with what the different standard was. I know my time's up, but I just wanted to mention the base offense problem. And I recognize that it's plain error, but because of the reference rather than the one, essentially all I want to really say about it is that if the pre-sentence report in the court is going to use the money laundering to start, it needs to use the money laundering throughout and use it exactly the way it's written by the guidelines. So since the money laundering is cross-referenced and not referenced to the theft guidelines, the base offense level should have been 6 rather than the 7, and that affects his sentence. Thank you for the excess time. We'll hear from the government. May it please the Court. Your Honor, it's Kirk Sheriff for the United States. And I'll first address the money laundering counts. The Defendant, Mr. Solano, waived the arguments regarding the 1957 convictions by making a motion, a Rule 29 motion on all counts, but then raising specific grounds that went to all counts to the District Court. And the District Court clarified then with the Defendant whether there were any other grounds, and I believe there's, I'm paraphrasing, but the Defendant submits at that point based on the pleadings which had not, I'm sorry, I'm sorry, let me step back on that. The Defendant does not raise further grounds, and the Court actually notes that the Court distilled the motion as being one based on essentially credibility of the witnesses, which was not disputed by the Defendant. And so the, I want to address before going a little bit more into that waiver issue the point that, secondly, viewed in the light most favorable to the prosecution as it must be on a sufficiency of the evidence review, the Defendant's note, which refers to the, what's now undisputed on appeal, fraud proceeds in the form of the $28,000 check from a co-conspirator. The note tying those to the two cashier's checks that come out of the bank account a few days after the fraud proceeds is deposited, that is essentially akin to a confession from the Defendant. It's not a word-for-word confession, but on a sufficiency of the evidence review, the Defendant's own handwritten note tying those together is directly tracing and tying the fraud proceeds to the cashier's checks. With, I did want to address a few more points on the waiver under the Rule, I'm sorry, yeah, the waiver under Rule 29. The Graff case makes clear that while a Defendant need not state specific grounds on a Rule 29 motion, where the Defendant does so, grounds not stated are waived. And the Defendant cites to, it wasn't raised in oral argument here, but the Defendant cites particularly in the reply brief to the Love decision out of the Sixth Circuit in which a Defendant made a general Rule 29 motion on all counts and then highlighted specific counts that the Defendant in that case wanted to address on the Rule 29 motion. And that's distinct from here in the sense, first of all, in Love, the court, the district court interpreted and the Court of Appeals, the Sixth Circuit on Appeal, interpreted it as being a general Rule 29 motion, whereas here the district court very clearly on the record notified the Defendant that based on the Defendant's representations that the court was interpreting it as distilling it to a very specific issue. But more importantly, perhaps, or equally importantly, the, while the Defendant made a Rule 29 motion on all counts, the grounds were specific, unlike in Love, and like in Graff. And so I think the Graff decision forecloses the argument that this was not a general Rule 29 motion, that it was not waived. It is waived under Graff. If there are, and I actually would just point out that the decision that Graff cites for the point that a Defendant need not state specific grounds to support a Rule 29 motion generally is Navarro-Vieira, which the Defendant relies on to say, well, we didn't have to support what the Defendant did here. But Graff distinguishes that case specifically by saying where specific grounds are raised, those not raised are waived. And the grounds raised in this case went to the entirety of all counts, because the grounds were essentially that there was no fraud in the underlying fraud transactions, which would have vitiated the money laundering counts as well. And secondly, part of that was the credibility, the core of that was that the credibility of the witnesses could not be credited, and the district court discounted that in its entirety as, at its core, a jury determination. Now, with respect, if I move on to the substance, the Rettgard decision, Your Honor, on, Your Honors, held very clearly that the government could not rely on a presumption that when tainted proceeds, fraud proceeds, are put into an account, and in Rettgard it was a very small portion of the overall amount in the account that was put in, and I understand the Court later in Hanley addressed it when it was a majority of the proceeds that were put into an account, but in any event, when proceeds are put into an account, there's not a presumption that the tainted proceeds taints any subsequent withdrawal. There's a circuit split on that, but that's the rule in the Ninth Circuit, and we respect that, but what we have in this case is extrinsic direct evidence, not simply an accounting tracing, in the defendant's own handwriting, and in a note prepared that the defendant the key point from the defendant's testimony on that would be that he acknowledged ownership of that note.  In fact, acknowledged that that note reflected how he paid for the vehicle, the car, the two money laundering checks, I'm sorry, the two cashier's checks that are subject to the money laundering counts were used to pay for. That note by the defendant ties in its entirety, I believe it's set out at page 14 of the government's brief, ties in what at the time he claimed was not fraud proceeds and what he now acknowledges on appeal were in fact fraud proceeds, the $28,000 check from his co-conspirator to the two cashier's checks. And I don't, I think that clearly takes the government out of the, we're not relying on a presumption that was foreclosed by Ruttgard and Hanley. And subsequently, we're saying that there's direct other evidence that was before the jury tying those two together. And part of that is obviously the note, that's the core. The timing of it is also crucial in that the one check goes in on June 13, 2006. The cashier's checks come out on June 20, 2006. And then there's the fact that the defendant did testify. And the defendant's arguments, both through his own testimony and on the cross-examination of the agent, did front this issue. This issue was a factual dispute as to the interpretation of the note, as to what the defendant, what the defendant did, where the defendant got those monies that went into the cashier's checks. And that was an issue squarely before the jury that the jury evaluated and found against the defendant on. I think you've established that. You've spent half your time establishing. Okay. Now, I would be interested in your commenting on the sentence. Understood, Your Honor. I'll move on to that issue then. I'll tell you, it first struck me as a fairly high sentence for something that wasn't bank robbery. I mean, it was a crime, but why should he have gotten the money? You tell me. Well, Your Honor, one of the issues that's interesting on appeal on that point is that there were a number of sentencing enhancements that were applied to the defendant, including obstruction of justice based on his perjury at trial, his leadership of the fraud scheme, which involved a total of four defendants. And there was another one which escapes me. Oh, abusive position of trust, I believe. There may have been a fourth one. The defendant challenged all of those enhancements before the district court. What the defendant did not do, and before I get — I believe I'm doing a little bit too long of an answer to the Court's question. The short answer is that when you calculate all of the guidelines that were applicable, including the base offense level correctly calculated plus the loss enhancement based on the actual loss, what you end up with is a guideline range at which the district court sentenced him to the midpoint of that guideline range. And — but I think it's important in terms of the equities, in terms of whether this was an equitable sentence, a just sentence, to note that the defendant's not claiming that those other enhancements should not have been applied. Those arguments are not even raised on appeal. And the district court didn't go outside the guidelines. It was straight in the middle of the guidelines, despite, as reflected by the district court's statements at sentencing, clearly finding that he was by far the core lead culprit in a multimillion-dollar fraud scheme. Now, I want to emphasize with respect to the sentence issue that the defendant raised in a — in his sentencing memorandum those objections to specific other enhancements. But his sentencing memorandum, which he submitted to the Court, was fully consistent with the PSR, the presentence report, and ultimately with where the district court came down on the base offense level and the loss amount under 2B1.1, and then added in the one point under 2S1.1, back to 2S1.1 for the money laundering conviction under 1957 convictions. So before the district court at sentencing was a sentencing memorandum from the defense agreeing with the loss amount and agreeing that the applicable base offense level when you look at 2B1.1 under the guidelines, as referenced over from 2S1.1, that it was 7. And so that's why we argue that both of those issues on appeal, and the defense concedes that the base offense level is, excuse me, subject to plain error review, but both of those issues were not only not objected to by the defense at sentencing, they were affirmatively proposed to the district court by the defense at sentencing. So it's actually more than a — it can't possibly meet the plain error standard when the defense itself requested the court to sentence the defendant based on the calculation of a base offense level of 7 under 2B1.1a. Kennedy. It seemed to me, at least on the appeal, that the question whether it should have been 7 or 6 might still be open. Do you think it's not? I don't think it is. And I also think it has no merit. And the reason — I'll address both of those. It's not open for the reason that the defense, as I indicated, requested that the court sentence the defendant on the basis of that base offense level of 7. And I'm referring specifically to the sentencing memorandum that's set out at page 244 of the Supplemental Excerpts of Record in which the defendant does a calculation that in which the base offense level and the loss amounts add up to 23, he adds in one point for 24 — I'm sorry, one point for money laundering for a total of 24. That calculation may not be spelled out exactly like that, but when you look through the sentencing memorandum and you note all of the specific objections the defendant has to the other enhancements, which are no longer challenged on appeal, the only way the defense gets to that net of 24 is by using the PSR's loss amount and base offense level. And so, now, as for the merits on that, the defense objects that the — that the and it particularly is to the base offense level first before I'll move on to the loss. The — with respect to the base offense level, the defense objects that there's a melding of 2S1.1, the money laundering guideline, with 2B1.1, but that's precisely what 2S1.1a directs the district court to do. It directs it in this kind of case to look at the base offense level for the underlying offenses for which the defendant was convicted, from which the laundered proceeds came. And in this case, that was — included the mail fraud and bank fraud convictions. Those each have a maximum sentence of at least 20 years, 20 years in mail fraud, 30 years in bank fraud. And so the 2S1.1 and this Court's precedents direct that when the court, the district court, then looks to 2B1.1, it calculates that freestanding, the offense level for the underlying offenses, in this case mail fraud and bank fraud. And 7 applies because those two statutes have a statutory max of 20 years or more and are cross-referenced to 2B1.1. I wish I had led with this point on this issue, but I want to point out that the defendant's score would result in a total evisceration of the purpose of 2S1.1, because essentially the way 2S1.1 operates here is to take the underlying guideline level for the fraud offenses and then add a point for 1957. The defendant claims that their net calculation is you take the point off based on an argument that 1957 isn't cross-referenced in 2B1.1, and so only 6 is the base offense level. That argument would completely eliminate the purpose of the 2S1.1 guideline in this context where it's designed to add something based on the money laundering conviction, not keep it consistent. If I have very little time, I would just address on the loss issue that the loss amount was not simply established at sentencing. It was also the subject of testimony at trial and evidence before the court at trial in the sense that the payment histories and the payment records showing all of the payments for all of the years throughout the fraud scheme were before the court and, I'm sorry, before the jury as well. And you had testimony from witnesses that confirmed that all of the checks, for example, in the name of the stolen, well, the assumed stolen identity, Clint Shaw, all of those proceeds were fraud proceeds. And the jury acquitted on many counts. The jury did acquit on some counts, on many counts of mail fraud and bank fraud. And he was convicted on several, a number of mail fraud and bank fraud counts as well. But you have, first of all, the conspiracy conviction, which captures the entire loss, and, moreover, you have the fact of multiple counts of conviction of bank fraud and mail fraud, and it's the entire scheme loss that's applicable, certainly under the conspiracy conviction, which is nearly 2.5 million. But even under the mail fraud and bank fraud convictions, even if you were to excise and take out the specific counts of acquittal, we're still well within that loss of 1 million to 2.5 million that's the loss range that is found by, was found by the district court. And I believe my time is up, Your Honor. Roberts. It is. Thank you. Thank you, Your Honor.
judges: Rakoff, Noonan, Clifton